UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------

SALVATORE FERRAGAMO S.P.A.,

                            Plaintiff,

                  -v-

JOHN DOES 1–56,

                            Defendants.

18-CV-12069 (JPO)

OPINION AND ORDER

---------------------------------------------------------------

J. PAUL OETKEN, District Judge:

    Plaintiff Salvatore Ferragamo S.p.A., an Italian retailer of luxury goods, brings this action against fifty-six operators of websites that sell unauthorized replicas of Ferragamo goods. The defendants have entirely failed to appear in this proceeding. Ferragamo moves for entry of default judgment, seeking both statutory damages and permanent injunctive relief. For the reasons that follow, the motion is granted.

**I.    Background**

    The following facts are taken from the complaint and, for purposes of this motion for default judgment, are assumed to be true. (*See* Dkt. No. 1 ("Compl.").)

    Plaintiff Salvatore Ferragamo S.p.A. is an Italian company that sells luxury goods, including footwear, handbags, wallets, and clothing. (Compl. ¶¶ 1–2.) Ferragamo sells these goods through its chain of retail stores and on its website, Ferragamo.com. (Compl. ¶ 2.)

    Defendants are fifty-six John Does[1] who operate websites that sell replicas of Ferragamo goods. (Compl. ¶¶ 4, 6, 21–22.) The websites all feature Ferragamo's registered trademarks and

---

[1] Defendants are the registrants, creators, or operators of 101 websites listed in an exhibit attached to the complaint. (Compl. ¶ 22.) The actual names, addresses, telephone numbers, or identities of Defendants, however, are unknown. (Compl. ¶ 21.)

logos. (Compl. ¶¶ 4–5.) The goods for sale also feature counterfeit reproductions of Ferragamo's registered trademarks and logos. (Compl. ¶ 6.) A subset of Defendants ("Cybersquatting Defendants") have registered domain names that either incorporate Ferragamo's trademarks or use "a confusingly similar variant thereof." (Compl. ¶ 27.)

In 2018, Ferragamo brought suit against Defendants under both the Lanham Act and state law. Pursuant to court order (Dkt. No. 7), Ferragamo served Defendants with a copy of the summons and complaint by e-mail on February 7, 2019 (Dkt. No. 11). Ferragamo also served Defendants with a preliminary injunction on May 29, 2019. (Dkt. Nos. 19.) To date, however, Defendants have neither filed an answer nor otherwise appeared in this proceeding. The Clerk of Court entered certificates of default on June 26, 2019. (Dkt. No. 22.) Ferragamo now moves for entry of default judgment and a permanent injunction. (Dkt. No. 23.)

## II. Legal Standard

A litigant has defaulted when she "has failed to plead or otherwise defend" against a claim "for affirmative relief." Fed. R. Civ. P. 55(a). "[A] default is an admission of all well-pleaded allegations against the defaulting party." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004). As a general matter, then, "a court is required to accept all of the . . . factual allegations [of the nondefaulting party] as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). Nonetheless, a district court must still determine whether the well-pleaded facts establish "liability as a matter of law." *Id.*

## III. Discussion

Ferragamo brings both federal trademark claims under the Lanham Act and state-law claims. Ferragamo seeks statutory damages and permanent injunctive relief. Each set of claims is discussed separately.

### A. Lanham Act Claims

Ferragamo first brings claims against all Defendants under the Lanham Act for trademark counterfeiting, trademark infringement, false designation of origin, and trademark dilution. Ferragamo also brings a cybersquatting claim against the Cybersquatting Defendants.

#### 1. Trademark Counterfeiting, Infringement, and False Designation of Origin

Claims of trademark counterfeiting and trademark infringement are governed by section 32 of the Lanham Act, which prohibits any person from using, without the consent of the registrant, a reproduction or counterfeit of a registered mark when "such use is likely to cause confusion, or to cause mistake, or to deceive . . . ." 15 U.S.C. § 1114(1)(a). To prevail on claims of trademark counterfeiting and infringement, the plaintiff must show (1) that it owns a valid trademark entitled to protection under the Lanham Act, (2) that the defendants used the trademark in commerce without plaintiff's consent in connection with the sale of goods or services, and (3) that there was a likelihood of consumer confusion. *See 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406–07 (2d Cir. 2005).

Similarly, claims of false designation of origin are governed by section 43(a) of the Lanham Act, which prohibits any person from using a "false designation of origin" on goods in commerce. 15 U.S.C. § 1125(a). To prevail on a claim of false designation of origin, the plaintiff must "demonstrate (1) it holds a valid trademark entitled to protection and (2) there is a 'likelihood of confusion.'" *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 730 (S.D.N.Y. 2004) (Chin, J.) (quoting *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 960 (2d Cir. 1996)).

In this case, Ferragamo alleges that (1) it is the owner of federally registered trademarks (Compl. ¶¶ 14–15), (2) Defendants used the trademarks, without Ferragamo's consent, on goods

3

that were sold in commerce (Compl. ¶¶ 16–22), and (3) Defendants' actions likely caused consumer confusion (Compl. ¶ 37). These allegations establish each of the elements of Ferragamo's claims for trademark counterfeiting, trademark infringement, and false designation of origin. Default judgment is granted on all three claims.

### 2. Trademark Dilution

Claims of trademark dilution are governed by section 43(c)(1) of the Lanham Act, which prohibits any person who uses a trademark "that is likely to cause dilution by blurring or . . . tarnishment of the famous mark." 15 U.S.C. § 1125(c)(1). There are five elements of a trademark dilution claim: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir. 1999).

Here, Ferragamo alleges that its trademarks are both famous (Compl. ¶ 75) and distinctive (Compl. ¶ 74), and that Defendants' use of the trademarks was commercial (Compl. ¶ 78) and began after Ferragamo's trademarks became famous (Compl. ¶ 75). Ferragamo also alleges that Defendants' use has led to both blurring and tarnishment of the trademarks. (Compl. ¶ 81.) Accordingly, Ferragamo has stated a claim for trademark dilution, and default judgment is granted on the claim.

### 3. Cybersquatting

A claim of cybersquatting is governed by 15 U.S.C. § 1125(d)(1)(A), which imposes liability on any person who "registers, traffics in, or uses a domain name that . . . is identical or confusingly similar to" a trademark. A plaintiff bringing a claim under § 1125(d)(1)(A) must demonstrate that (1) its trademark is either distinctive or famous, (2) the domain name is identical or confusingly similar to the trademark, and (3) the defendant acted with a bad-faith

4

intent to profit from the trademark. *See Sporty's Farm L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 497–99 (2d Cir. 2000).

In this case, Ferragamo alleges that its trademarks are distinctive and famous and that the domain names of Cybersquatting Defendants' websites are either identical to or confusingly similar to Ferragamo's trademarks. (Compl. ¶ 57.) Ferragamo also alleges that Cybersquatting Defendants acted with "the intent to tarnish and disparage the Ferragamo Trademarks." (Compl. ¶ 61.) These allegations state a claim for cybersquatting. Default judgment is granted on this claim.

B. **State-Law Claims**

In addition to its federal claims, Ferragamo brings statutory claims under New York state law for trademark dilution and deceptive acts and practices. Ferragamo also brings New York common-law claims for trademark infringement and unfair competition.

1. **Trademark Dilution**

Under New York law, "the necessary elements for a dilution . . . claim are the possession of a distinctive trademark and likelihood of dilution." *See Scholastic, Inc. v. Stouffer*, 124 F. Supp. 2d 836, 848 (S.D.N.Y. 2000) (citing N.Y. Gen. Bus. Law § 360-*l*). "[T]he federal standard [for trademark dilution] . . . is more stringent than the New York standard." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004). Accordingly, because Ferragamo has already stated a claim for federal trademark dilution, it has perforce stated a claim under New York state law as well. Default judgment on this claim is granted.

2. **Deceptive Acts and Practices**

Ferragamo brings claims under section 349 and section 350 of New York General Business Law, which bar, respectively, deceptive acts and practices and false advertising. *See* N.Y. Gen. Bus. Law §§ 349, 350. To state a claim under either section 349 or section 350,

5

Plaintiff must show (1) "that the challenged act or practice was consumer-oriented," (2) "that it was misleading in a material way," and (3) "that the plaintiff suffered injury as a result of the deceptive act." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 490 (2d Cir. 2014) (quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000)).

But "[t]he majority view in this Circuit is that trademark or trade dress infringement claims are not cognizable under §§ 349 and 350 of the New York General Business Law unless there is a specific and substantial injury to the public interest *over and above ordinary trademark infringement* or dilution." *Universal Church, Inc. v. Universal Life Church/ULC Monastery*, No. 14-CV-5213, 2017 WL 3669625, at *17 (S.D.N.Y. Aug 8, 2017) (quoting *Nomination Di Antonio E Paolo Gensini S.N.C. v. H.E.R. Accessories Ltd.*, No. 07-CV-6959, 2009 WL 4857605, at *8 (S.D.N.Y. Dec. 14, 2009)). A plaintiff "must allege conduct that has 'significant ramifications for the public at large' in order to properly state a claim." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) (quoting *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002)).

Here, Ferragamo alleges nothing beyond general consumer confusion — the kind ordinarily found in a trademark infringement case. Thus, Ferragamo has failed to establish a threshold requirement of a claim under section 349 or section 350. Default judgment on this claim is denied.

### 3. Trademark Infringement and Unfair Competition

"[T]he elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law 'mirror the Lanham Act claims,'" except that unfair competition "requires an additional showing of bad faith." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (quoting *Malletier v. Dooney & Bourke, Inc.*, 340 F. Supp. 2d 415, 436–37 (S.D.N.Y. 2004)). "Under New York law, a

6

presumption of bad faith attaches to the use of a counterfeit mark." *Philip Morris USA Inc. v. Felizardo*, No. 03-CV-5891, 2004 WL 1375277, at *6 (S.D.N.Y. June 18, 2004). Accordingly, all elements of common-law trademark infringement and unfair competition have been established. Default judgment is granted on these claims.

### C. Relief

Ferragamo seeks both statutory damages and permanent injunctive relief.

#### 1. Statutory Damages

Under the Lanham Act, Ferragamo may elect to receive an award of statutory damages rather than actual damages. *See* 15 U.S.C. § 1117(c). Statutory damages are to be "not less than $1,000 or not more than $200,000 per counterfeit mark per type of goods . . . as the court considers just." 15 U.S.C. § 1117(c)(1). For willful violations, however, the statute authorizes damages of up to "$2,000,000 per counterfeit mark per type of goods . . . as the court considers just." *Id.* § 1117(c)(2). As for willful cybersquatting, the statute authorizes statutory damages of up to $100,000 per infringing domain name. *Id.* § 1117(d).

"By virtue of the default, [Defendants'] infringement is deemed willful, and therefore the Court has discretion to award anywhere between [$1,000] and $[2,000,000] per counterfeit mark per type of good sold." *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Because each Defendant operates at least one website that sells at least one infringing product, Ferragamo could seek statutory damages of at least $2 million from each Defendant. Ferragamo, however, seeks an amount of $50,000 from each Defendant. (Dkt. No. 23 at 10.)

To determine what damages award is "just," courts have looked to the following factors, drawn from copyright law: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant

7

has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Tiffany*, 282 F. Supp. 2d at 125 (internal quotation marks omitted) (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)).  Here, Defendants' default prevents the Court from making specific findings on most of the factors.  But "[t]he Second Circuit instructs that in determining infringement damages, courts are to resolve against [defaulting] defendants any factual uncertainties." *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 169 (S.D.N.Y. 1999).  And the remaining factors cut decisively against Defendants: Ferragamo's trademarks are undeniably valuable, and Defendant's conduct was willful.  For these reasons, the Court agrees that $50,000 is an appropriate award of damages against each Defendant.[2]

### 2. Permanent Injunction

Under the Lanham Act, district courts have the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."  15 U.S.C. § 1116.  To secure a permanent injunction, in particular, a plaintiff must demonstrate success on the merits, as well as that "(1) he is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate for that injury; (3) the balance of hardships tips in his favor; and (4) the public interest would not be disserved by the issuance of a [permanent] injunction." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 539 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010)).

---

[2] Under 15 U.S.C. § 1117(a), the prevailing party in "exceptional cases" is entitled to attorney's fees.  But Ferragamo does not seek a separate award of attorney's fees; rather, it requests that costs and fees "be considered in the Court's calculation of statutory damages." (Dkt. No. 23 at 11.)

In this case, Ferragamo has already established success on the merits. And irreparable injury is demonstrated because "Defendants' refusal to defend this action creates a threat that they will continue to infringe [Ferragamo's] trademarks unless permanently enjoined from doing so." *Ideavillage Prods. Corp. v. Bling Boutique Store*, No. 16-CV-9039, 2018 WL 3559085, at *5 (S.D.N.Y. 2018). Further, irreparable injury arises from the threatened damage "to the reputation of [Ferragamo's] products, for which it would be difficult to determine monetary damages." *Id.* For that same reason, monetary damages are inadequate "[b]ecause the losses of reputation and goodwill and resulting loss of customers are not precisely quantifiable." *NYP Holdings v. N.Y. Post Publ'g Inc.*, 63 F. Supp. 3d 328, 342 (S.D.N.Y. 2014) (quoting *U.S. Polo Ass'n*, 800 F. Supp. 2d at 541). The balance of hardships weighs in favor of an injunction, as Ferragamo has "spent substantial time and money marketing its . . . products and establishing the good will and reputation for quality associated with its registered trademarks." *Ideavillage*, 2018 WL 3559085, at *5. Finally, the public interest favors an injunction: "the public has an interest in not being deceived — in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010).

Because each of these elements weighs in favor of Ferragamo, the Court grants the request for a permanent injunction.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for default judgment and for a permanent injunction is GRANTED. An accompanying judgment will be issued consistent with the foregoing.

The Clerk of Court is directed to close the motion at Docket Number 23 and to close this case.

SO ORDERED.

Dated: February 18, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge